AARON M. CLEFTON, Esq. (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C #336
Alameda, CA 94501
Telephone: (510) 832-500
aaron@cleftonlaw.com

Attorneys for Plaintiff
AVA CLARK, by and through her
Guardian Ad Litem, ALICIA COLEMAN-CLARK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVA CLARK, by and through her Guardian Ad Litem, ALICIA COLEMAN-CLARK,<br><br>Plaintiff,<br><br>v.<br><br>JIPING ZHANGE dba OKAWA JAPANESE RESTAURANT,<br><br>Defendant. | CASE NO. 26-cv-9312<br>Civil Rights<br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES REGARDING DENIAL OF SERVICE DOG AND HANDLER TO EQUALLY USE AND ENJOY PUBLIC ACCOMMODATION:**<br><br>**1. Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>**2. Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br>**3. Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff AVA CLARK, by and through her Guardian Ad Litem, ALICIA COLEMAN-CLARK complains of Defendant JIPING ZHANGE dba OKAWA JAPANESE RESTAURANT, and alleges as follows:

1. **INTRODUCTION:** Plaintiff Ava Clark is a disabled individual who uses the assistance of a service dog to ameliorate her disability. On July 1, 2026, Plaintiff ordered takeout from Defendant's restaurant Okawa Japanese Restaurant located at 2327 Buchanan Road, Antioch, CA 94509 ("Okawa"). Around 8:00 pm Plaintiff's mother drove her to Okawa, and Plaintiff went inside the restaurant by herself to pick up her order. As is her usual practice,

Plaintiff was accompanied by her service dog Emma.

2. Plaintiff entered the Okawa with Emma with the intention of picking up her order, but instead she was immediately approached by one of Defendant's employees who informed her that dogs were not allowed at Okawa. Plaintiff immediately left, as she has severe social anxiety that does not allow her to deal with this type of confrontation independently. When Plaintiff came out of Okawa with her order, Plaintiff's mother asked her what happened. She then went back inside Okawa with Plaintiff and Plaintiff's service dog to help her navigate the situation. When they went back inside, Defendant's employee again told Plaintiff and her mother that dogs were not allowed inside the restaurant and attempted to usher Plaintiff, Emma and her mother outside.

3. Plaintiff's mother attempted to explain to Defendant's employee that Plaintiff's dog is a service dog and therefore allowed to accompany Plaintiff anywhere the general public is allowed. The employee ignored Plaintiff's mother and pointed to a sign posted in the restaurant that stated "No Dogs Allowed." It was clear to Plaintiff and her mother that Defendant's employee would not allow Plaintiff to pick up her takeout order at Okawa while Plaintiff was accompanied by her service dog, so Plaintiff took Emma outside while Plaintiff's mother picked up Plaintiff's order. The experience was exclusionary and humiliating for Plaintiff. Further, this type of interaction sets Plaintiff back significantly in her quest to be independent.

4. Defendant denied disabled Plaintiff Ava Clark equal access to the Okawa because she is a disabled individual who uses a service dog to assist her with tasks related to her disability. Further, Defendant's employee treated Plaintiff with disrespect and refused to allow her to access to Okawa due to the presence of her service dog.

5. The Defendant's decision to not allow service dogs in the dining area of the Okawa is patently discriminatory and did not afford equal access and enjoyment of its services. It also contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals." In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a

legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

- Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.
- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.

6. Okawa is near to Plaintiff's home, and she is often interested in trying various cuisines from nearby restaurants. Plaintiff intends to return to Okawa in the future but cannot do so until the policies of the restaurant are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training and/or re-training. Plaintiff has brought this lawsuit to force Defendant to change its discriminatory and illegal policies and compensate her for refusing to allow Plaintiff to enter the dining area of Okawa because Plaintiff is a disabled person who needs the assistance of her qualified service dog. Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at Okawa.

7. **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1343. This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

8. **VENUE:** Venue is proper in this court pursuant to 28 U.S.C. section 1391(b) and is proper because the real property which is the subject of this action is in this district and that Plaintiff's causes of action arose in this district.

9. **PARTIES:** Plaintiff Ava Clark is a "qualified" disabled person who uses a service dog to assist her with certain tasks related to her disability. She has been diagnosed with autism which in her case affects her executive functioning, reasoning, logic, understanding, and

mood. Additionally, Plaintiff becomes easily emotionally dysregulated which causes intense, overwhelming emotional responses that are difficult to recover from. Plaintiff also has comorbidities that stem from her autism diagnosis of depression, anxiety, and avoidant/restrictive food intake disorder (ARFID) which causes her avoid eating due to issues with the taste, texture and smell of food as well as the fear of aspirating while eating. To help her with ARFID, Plaintiff has participated in intensive outpatient exposure therapy which encourages her increase her food intake and try new foods. It is important that Plaintiff be encouraged to eat whenever she shows an interest in food, as was the case during the incident. Plaintiff's disabilities substantially limit many of her major life activities including thinking, concentrating, maintaining relationships, sleeping, and eating.

10. Plaintiff relies upon her service dog, a professionally trained rottweiler named "Emma" to assist her with a variety of essential tasks to support her health and safety. Emma has been trained to recognize when Plaintiff is dysregulated and perform deep pressure therapy on her. Emma does this by pushing her weight against Plaintiff's body if Plaintiff is standing or placing her head in Plaintiff's lap when she is sitting down. Additionally, Emma is trained to alert Plaintiff when she needs to eat. If Plaintiff has not eaten for several hours, Emma will nudge Plaintiff to remind her to eat.

11. Emma was and continues to be professionally trained to be a service dog by a professional trainer, Gabby Dillworth. Emma is four years old, and she has been training with Gabby Dillworth since she was a puppy. Plaintiff and Emma have been working together for one year. Emma was trained as a service dog prior to working with Plaintiff, and then Plaintiff and Emma worked with their trainer to tailor the task training to Plaintiff's needs. They continue to train with Ms. Dillworth on a regular basis, and Plaintiff and Emma reinforce their training together daily. Plaintiff is a qualified person with a disability as defined under federal and state law. 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

12. Defendant JIPING ZHANGE dba OKAWA JAPANESE RESTAURANT is and was at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business located at 2327 Buchanan Road, Antioch, CA 94509, known as the Okawa Japanese

Restaurant.

13. Okawa is a place of "public accommodation" and a "business establishment" subject to the requirements *among other things* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq*.

14. **FACTUAL STATEMENT:** Plaintiff Ava Clark has been working with her service dog Emma for about a year. Emma is a four-year-old rottweiler who was trained to be a service dog. Emma was both professionally trained and individually trained by Plaintiff to be a service dog. Plaintiff has also continued to train Emma to serve her specific needs throughout their relationship. Emma and Plaintiff also continue to work with a professional trainer to reinforce task training on a regular basis. Emma is specifically trained to assist Plaintiff with certain tasks including (1) performing deep pressure therapy when Plaintiff becomes emotionally dysregulated and (2) alerting her to eat when Plaintiff has not eaten for several hours.

15. Emma is a working service dog; she is not a pet. Plaintiff and Emma have trained extensively together, and they supplement that training daily. Plaintiff takes Emma almost everywhere with her in public. It is important they stay together as much as possible because (a) Emma provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond. Where Plaintiff goes, Emma goes. Below are a photos of Emma:





16. As part of Plaintiff's ongoing treatment for ARFID, it is clinically important that she be encouraged and supported whenever she independently expresses interest in eating, as such moments of self-initiated interest are critical opportunities to build healthier eating patterns and are not reliably replicable if missed. Her progress is essential in dealing with ARFID to learn to live independently and safely. Thus, her mother encourages her to try restaurants and cuisines that are new to her such as Okawa.

17. On July 1, 2026, Plaintiff expressed interest in trying a new cuisine, Japanese food, and her mother encouraged her to order dinner from Okawa. Plaintiff ordered her dinner online for takeout. Plaintiff's mother drove Plaintiff to Okawa to pick up the order and encouraged Plaintiff to go inside and retrieve the order herself, consistent with Plaintiff's ongoing efforts to build independence and practice social interaction.

18. At approximately 8:00 p.m., Plaintiff entered Okawa, located at 2327 Buchanan Rd, Antioch, CA 94509, accompanied by her service dog, Emma, to retrieve her order. One of Defendant's employees immediately told Plaintiff that she could not remain inside the restaurant with her service dog. Due to her disability, Plaintiff was not equipped to engage in a confrontation with Defendant's employee and immediately left the restaurant.

19. When Plaintiff's mother saw Plaintiff exit the restaurant without her food, she asked Plaintiff why she had not retrieved the order. Plaintiff explained that Defendant's employee had told her that no dogs were allowed inside. Plaintiff's mother told Plaintiff that this was not right, and Plaintiff, her mother, and Emma returned to the restaurant together to explain the situation and retrieve Plaintiff's order.

20. As soon as Plaintiff stepped back inside the restaurant with Emma, one of Defendant's employees who was at the sushi bar again stated that no dogs were allowed in the restaurant. He then called another employee from the back of the restaurant. The second employee came up to the front and told Plaintiff and her mother that no dogs were allowed and began ushering Plaintiff and her mother toward the exit.

21. Plaintiff's mother attempted to explain that Emma is Plaintiff's service dog and is therefore permitted to accompany Plaintiff anywhere members of the general public is allowed,

including inside Okawa. Defendant's employee continued to insist that no dogs were allowed and pointed to a sign posted inside the restaurant stating that dogs were not permitted per the Contra Costa County Health Department.

22. Plaintiff's mother continued to ask Defendant's employee to provide Plaintiff's takeout order and explained that excluding a service dog from the restaurant was contrary to law. Defendant's employee continued to state that no dogs were allowed and directed Plaintiff and her mother toward the door.

23. It became clear to Plaintiff and her mother that Defendant's employee would not release Plaintiff's takeout order while Emma remained inside the restaurant. They all exited Okawa as directed by Defendant's employee.

24. Plaintiff was embarrassed and upset, and she wanted to leave the premises immediately without getting her order. Plaintiff's mother encouraged her to stay and get the takeout order since it was something that she had really wanted to try earlier in the evening. While Plaintiff, her mother, and Emma were standing outside deciding what to do, Defendant's employee came outside and handed them Plaintiff's takeout order.

25. Plaintiff was frustrated, embarrassed, and uncomfortable about her interactions at Okawa. Further, Plaintiff's attempt to try a new cuisine, undertaken as part of her ongoing treatment, was disrupted. Plaintiff also lost the opportunity to independently receive her own order when her mother was forced to intervene, and the encounter heightened her social anxiety. Following the incident, Plaintiff has been reluctant to go out in public for fear of being questioned about Emma.

26. At no point did any employee of Defendant ask Plaintiff the two questions permitted under the ADA regarding service animals (i.e., (1) whether the dog was required because of a disability, and (2) what work or task the dog was trained to perform), nor did any employee take any affirmative step to help Plaintiff access the dining area with Emma.

27. Plaintiff has a desire to return to Okawa to eat there or get takeout. However, Plaintiff does not want to go back to Okawa because her previous experiences have made it clear that Defendant does not maintain a service animal policy that complies with state and federal

access laws. It is also clear that Defendant's employees have not received training about how to interact with disabled patrons who rely on service dogs for assistance.

28. Plaintiff wishes to return to Okawa, but only *after* Defendant has implemented proper service animal policies and training of its staff. Plaintiff is deterred from returning to Okawa until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 U.S.C. §§ 12101 *et seq*.)**

29. Plaintiff repleads and incorporates by reference, as if fully set forth again here, the factual allegations contained in Paragraphs 1 through 28, above, and incorporates them here by reference as if separately repled hereafter.

30. In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101(a).

31. The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.

32. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

33. Okawa Japanese Restaurant is a public accommodation under Title III of the ADA. 42 U.S.C. § 12181(7)(B).

34. The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

35. Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

36. Defendant has a policy and practice of denying access to patrons of Okawa with service animals. Defendant's decision to not allow Plaintiff inside Okawa with her service animal contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals." In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.
- Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.

- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.

37. On information and belief, as of the date of Plaintiff's most recent visit to Okawa on or about July 1, 2026, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

38. In passing the Americans with Disabilities Act of 1990 ("ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b).

39. As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 U.S.C. § 12181 *et seq.*). The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "restaurant, bar, or other establishment serving food or drink." 42 U.S.C. § 12181(7)(B).

40. The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182. The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

The acts and omissions of Defendant set forth here were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

41. On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

42. Defendant's actions continue to deny Plaintiff's right to full and equal access by deterring Plaintiff from patronizing Okawa and discriminated and continue to discriminate against her on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA. 42 U.S.C. § 12182.

43. Under the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of her disabilities in violation of sections 12182 and 12183 of this title. On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters. Under section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

44. Plaintiff seeks relief under remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing she will be subjected to such discrimination each time that she may use the property and premises, or attempt to visit Okawa, because of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as stated below.

**SECOND CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

45. Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 44 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

46. Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places." Civil Code § 54(a).

47. Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited." Civil Code § 54.1(c) also specifies that "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

48. Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

49. Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

50. Okawa is a public place/facility within the meaning of the CDPA. On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

51. Defendant made the decision to knowingly and willfully exclude Plaintiff and her service dog from its public accommodation and thereby deny Plaintiff her right of entrance into its place of business with her service dog. As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this public accommodation and place of business based on Defendant's illegal prohibition of her legally protected use of her service dog. Plaintiff has continued to suffer denial of access to these facilities and faces the prospect of unpleasant and discriminatory treatment should she seek to return to these facilities. Plaintiff cannot return to Okawa until she receives the protection of this Court's injunctive relief, and she

has continued to suffer discrimination daily since July 1, 2026, all to her statutory damages under California Civil Code §§ 54.1, 54.2, and 54.3.

52. **INJUNCTIVE RELIEF:** Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of here which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, who require the assistance of service animals, from full and equal access to these public facilities. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against her on the sole basis that she is a person with disabilities who requires the assistance of a service animal.

53. Plaintiff wishes to return to patronize Okawa but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause her further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to patronize Okawa and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

54. The acts of Defendant have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court. Plaintiff seeks injunctive relief as to Defendant's inaccessible policies. As to Defendant that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

55. Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply immediately with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws. Plaintiff further requests that the Court award

damages under Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs under Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as prayed below for.

56. **DAMAGES:** Because of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of her civil rights, including, but not limited to, rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to her damages per Civil Code section 54.3, including general and statutory damages, as stated below. Defendant's actions and omissions to act constitute discrimination against Plaintiff because she was and is disabled and unable, because of the policy barriers created and/or maintained by Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons. The violations have deterred Plaintiff from returning to attempt to patronize Okawa and will continue to cause her damages each day these barriers to access and policy barriers are still present.

57. Although Plaintiff need not prove wrongful intent to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant are aware and/or was made aware of its duties to refrain from establishing discriminatory policies against disabled persons, before this complaint was filed. Defendant's establishment of their discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

58. **FEES AND COSTS:** As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, under Civil Code

sections 54.3 and 55. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure section 1021.5 and other applicable law.

59. Plaintiff suffered damages as above described as a result of Defendant's violations. Damages are ongoing based on her deterrence from returning to Okawa.

WHEREFORE, Plaintiff prays for relief as stated below.

**THIRD CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)**

60. Plaintiff re-pleads and incorporates by reference, as if fully set forth again here, the allegations contained in Paragraphs 1 through 59 of this Complaint and incorporates them herein as if separately re-pleaded.

61. At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

62. California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of her disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

63. Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

64. Any violation of the Americans with Disabilities Act of 1990 constitutes a

violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief under California law, including Civil Code section 52. Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

65. The actions and omissions of Defendant as alleged here constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs under California Civil Code sections 51 and 52. As a proximate result of Defendant's actions and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and is responsible for statutory and compensatory damages to Plaintiff, according to proof.

66. **FEES AND COSTS:** As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs under California Civil Code sections 51 and 52. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure section 1021.5 and other applicable law.

67. Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as stated below.

## PRAYER

Plaintiff has no adequate remedy at law to redress the wrongs suffered as stated in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury because of the unlawful acts, omissions, policies, and practices of Defendant as alleged herein, unless Plaintiff is granted the relief she requests. Plaintiff and Defendant have an actual controversy and opposing legal positions on Defendant's violations of the laws of the United States and the State

of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Ava Clark by and through her Guardian Ad Litem, Alicia Coleman-Clark prays for judgment and the following specific relief against Defendant:

1. An order enjoining Defendant, their agents, officials, employees, and all persons acting in concert with them:

   a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

   b. To modify their policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that her service dog will not be excluded should she desire to enter and use the services of Okawa;

   c. That the Court issue preliminary and permanent injunction directing Defendant as current owner, operator, lessor, and/or lessee and/or its agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction under ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

   d. An order retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of statutory, actual, general, treble, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California

Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

4. An award of prejudgment interest under Civil Code § 3291;

5. Interest on monetary awards as permitted by law; and

6. Grant any other relief that this Court may deem just and proper.

Date: September 1, 2026

CLEFTON DISABILITY LAW

*/s/ Aaron M. Clefton*
By AARON M. CLEFTON, Esq.
Attorney for Plaintiff
AVA CLARK, by and through her Guardian Ad Litem, ALICIA COLEMAN-CLARK

**JURY DEMAND**

Plaintiff demands a trial by jury for all claims for which a jury is permitted.

Date: September 1, 2026

CLEFTON DISABILITY LAW

*/s/ Aaron M. Clefton*
By AARON M. CLEFTON, Esq.
Attorney for Plaintiff
AVA CLARK, by and through her Guardian Ad Litem, ALICIA COLEMAN-CLARK